## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Court No. 21-00573

## <u>ORDER</u>

Upon reading plaintiff's motion for summary judgment; defendant's cross-motion for summary judgment; plaintiff's response and reply; defendant's reply; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment be, and hereby is, granted; and it is further

**ORDERED** that judgment is entered for defendant and this action be, and hereby is, dismissed.

_____
JANE A. RESTANI, JUDGE

Dated: New York, New York
This _____ day of _____, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

        *Plaintiff,*

    v.

UNITED STATES,

        *Defendant.*

Court No. 21-00573

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                          BRANDON A. KENNEDY
Michael Anderson                 Trial Attorney
General Attorney                   Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation    26 Federal Plaza, Room 346
U.S. Customs and Border Protection    New York, New York 10278
New York, New York 10278      Tel.: (212) 264-9230
                                         *Attorneys for Defendant*

Dated: December 13, 2024

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

ENTRY OF MERCHANDISE AND ADMINISTRATIVE BACKGROUND ...........................11

QUESTION PRESENTED.................................................................................................. 12

SUMMARY OF ARGUMENT .......................................................................................... 13

ARGUMENT ...................................................................................................................... 14

I.   Standard Of Review.................................................................................................. 14

II.  The SCR Catalyst Blocks Are "Filtering Or Purifying . . . Apparatus, For
     . . . Gases," Of Heading 8421 ................................................................................ 16

     A.  The SCR Catalyst Blocks Are Apparatus—A Set Of Equipment Or Complex
         Device For Performing A Particular Function ............................................. 16

     B.  The SCR Catalyst Blocks Filter Or Purify Gases By Converting Harmful
         Substances Into Innocuous Ones ................................................................ 17

     C.  Mitsubishi's Interpretation Of The Verb To "Purify" Is Not Supported
         By The Common Meaning Of The Tariff...................................................... 19

III. The SCR Catalyst Blocks Are Not "Reaction Initiators, Reaction Accelerators
     And Catalytic Preparations, Not Elsewhere Specified Or Included,"
     Of Heading 3815............................................................................................... 22

     A.  The SCR Catalyst Blocks Are Not Covered By The Plain Meaning Of
         The Terms Of Headings 3815...................................................................... 23

     B.  Mitsubishi's Misapplies The Sequential Order Of The GRIs .................... 24

     C.  The Flawed Nature Of Mitsubishi Classification Analysis Is Revealed By Its
         Application Of GRI 3(b)............................................................................... 25

IV.  The SCR Catalyst Blocks Do Not Qualify For Exclusions From Section
     301 Duties ........................................................................................................... 26

     A.  The Product-Specific, Written Descriptions Of Section 301 Exclusions
         Govern—Not Product Descriptions Provided In Exclusion Requests ...................... 26

     B.  The Exclusions, As Written, Do Not Cover The SCR Catalyst Blocks .................... 27

i

C.  There Is No Legal Basis For The Alternative Remedy  Requested By Mitsubishi—The Request For An Order From The Court To Rewrite The Exclusions ............................................................................. 29

CONCLUSION ........................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Baxter Healthcare Corp. v. United States,*
  182 F.3d 1333 (Fed. Cir. 1999)............................................................... 15

*Brown Grp. Inc. v. United States,*
  17 C.I.T. 919 (1993) .............................................................................. 31

*Carl Zeiss, Inc. v. United States,*
  195 F.3d 1375 (Fed. Cir. 1999)........................................................ 15, 16

*Continental Automotive Systems, Inc. v. United States,*
  589 F.Supp.3d 1215 (Ct. Int'l Trade 2022) ...................................... 16, 20

*Davies v. Arthur*
  96 U.S. 148 (1878)................................................................................. 29

*Deringer v. United States,*
  656 F.Supp. 670 (Ct. Int'l Trade 1986) ................................................. 19

*Franklin v. United States,*
  289 F.3d 753 (Fed. Cir. 2002).................................................... 18, 19, 20

*Home Depot U.S.A., Inc. v. United States,*
  915 F.3d 1374 (Fed. Cir. 2019)........................................................ 23, 24

*Ildico Inc. v. United States,*
  2024 WL 4648084 (Ct. Int'l Trade Nov. 1, 2024)............................. 15, 24

*Noss Co. v. United States,*
  588 F.Supp. 1408 (Ct. Int'l Trade 1984)

  *aff'd*, 753 F.2d 1052 (Fed. Cir. 1985) .................................................. 18

*Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.,*
  858 F.3d 1324 (10th Cir. 2017) ............................................................. 21

*Prysm, Inc. v. United States,*
  2019 WL 6332638 n.9 (Ct. Int'l Trade Nov. 26, 2019)......................... 28

*Russ Berrie & Co., Inc. v. United States,*
  329 F.Supp.3d 1345 (Ct. Int'l Trade 2018) ........................................... 29

*Russell Stadelman & Co. v. United States,*
  242 F.3d 1044 (Fed. Cir. 2001)............................................................. 15

*Saab Cars USA, Inc. v. United States*,
  434 F.3d 1359 (Fed. Cir. 2006) ................................................................ 29

*Telebrands Corp. v. United States*,
  865 F.Supp.2d 1277 (Ct. Int'l Trade 2012)

  *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) ................................................ 15

*Trijicon, Inc. v. United States*,
  686 F.Supp.3d 1336 (Ct. Int'l Trade 2024) ........................................ 16, 17

*United States v. Caputo*,
  517 F.3d 935 (7th Cir. 2008) .................................................................... 20

*Wilton Indus. v. United States*,
  741 F.3d 1263 (Fed. Cir. 2013) ................................................................ 15

**Statutes**

19 U.S.C. § 1514(a) ...................................................................................... 30

19 U.S.C. § 1515 .......................................................................................... 30

19 U.S.C. § 2411 .......................................................................................... 26

28 U.S.C. § 1581(a) ................................................................................ 29, 30

Section 301 of the Trade Act of 1974, Pub. L. 93-618 ........................ *passim*

**Regulations**

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related
to Technology Transfer, Intellectual Property, and Innovation*,
85 Fed. Reg. 27,489, 27,489–90 (USTR May 8, 2020) .................... 26, 27, 30

*Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices
Related to Technology Transfer, Intellectual Property and Innovation*,
85 Fed. Reg. 48,600, 48,601 (Aug. 11, 2020) .................................... 27, 30

**Harmonized Tariff Schedule of the United States**

General Rule of Interpretation 1 ............................................................ *passim*

General Rule of Interpretation 2(b) .............................................................. 25

General Rule of Interpretation 3 .......................................................... 15, 23

General Rule of Interpretation 3(b) ......................................... 3, 14, 24, 25

General Rule of Interpretation 6 ................................................................. 21

Chapter 38

Explanatory Note 38.15 ............................................................................ 23

   Heading 3815 .................................................................................. *passim*

     Subheading 3815.19.00 ................................................................ 12

     Subheading 3815.19.0000 ................................................. 13, 27, 28

Chapter 84

Explanatory Note 84.21 (II) ..................................................................... 18

Explanatory Note 84.21 (II)(B)(4) ....................................................... 18, 20

   Heading 8421 .................................................................................. *passim*

     Subheading 8421.11 ................................................................... 21

     Subheading 8421.29 ................................................................... 21

     Subheading 8421.31 ................................................................... 21

     Subheading 8421.39 ................................................................... 22

     Subheading 8421.91 ................................................................... 21

     Subheading 8421.99 ................................................................... 21

     Subheading 8421.39.40 ......................................................... 11, 22

     Subheading 8421.39.80 ..................................................... 13, 21, 22

Chapter 85

   Heading 8528 .................................................................................. 28

   Heading 8543 .................................................................................. 28

Chapter 99

U.S. Note 2 to Chapter 99 ........................................................................ 15

U.S. Notes 20(a) and 20(b) to Chapter 99 ................................................. 22

    Heading 9903

        Subheading 9903.88.01 .......................................................... 12, 13, 22

        Subheading 9903.88.03 .......................................................... 12, 28

        Subheading 9903.88.46 .......................................................... 13, 27, 29

        Subheading 9903.88.56 .......................................................... 13, 27, 29

**Rules**

USCIT Rule 56 ....................................................................................... 1

USCIT Rule 56(a) .................................................................................. 14

**Other Authorities**

U.S. Gov't Accountability Off, GAO-21-506,
    Report to Congressional Requesters: U.S. Trade 3 (2021) .................... 26

HQ H311223 (Apr. 19, 2021) ................................................................. 12

CATALYST, *Oxford English Dictionary,*
available at https://www.oed.com/dictionary/catalyst_n?tab=meaning_and_use#10071260 ....... 6

APPARATUS, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/apparatus ........................................ 16

FILTER, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/filter ................................................ 17

PURIFY, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/filter ................................................ 18

CATALYTIC CONVERTER, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/catalytic%20converter ............. 20, 22

CENTRIFUGE, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/centrifuge ........................................ 21

AIR FILTER, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary/air%20filter .................................... 21

INTERNAL COMBUSTION ENGINE, *Merriam Webster,*
available at https://www.merriam-webster.com/dictionary
/internal%20combustion%20engine ............................................................................................ 22

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Court No. 21-00573

## DEFENDANT'S CROSS-MOTION FOR
## SUMMARY JUDGMENT AND RESPONSE IN
## <u>OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the United States Court of International Trade, defendant, the United States (the Government), respectfully cross-moves for summary judgment. Summary judgment in favor of the Government is appropriate because there are no genuine issues of material fact, and the Government is entitled to judgment in its favor as a matter of law.

## <u>INTRODUCTION</u>

Nitrogen oxides and elemental mercury can pollute the air and harm human health. They are created by fuel combustion and are thus present in industrial exhaust, also known as flue gas. To remove these pollutants from flue gas, plants install complex devices called selective catalytic reduction (SCR) catalyst blocks ("SCR catalyst blocks" or "blocks") into their air quality control systems. Flue gas is routed from a combustion source, such as a boiler, through the SCR catalyst blocks and is ultimately released out of a stack. Before the flue gas enters these blocks, it contains nitrogen oxides and elemental mercury; after the flue gas exits, it no longer contains nitrogen oxides or elemental mercury due to chemical reactions spurred by a chemical substance

(a catalyst) coating the blocks' interior mesh.  SCR catalyst blocks thus filter or purify flue gas, just like a catalytic converter filters or purifies a car's exhaust.

The merchandise that is the subject of this action are SCR catalyst blocks imported by Plaintiff Mitsubishi Power Americas, Inc.'s (Mitsubishi) that use one of two general formulations: "CM" and TRAC".  Mitsubishi's imported SCR catalyst blocks are properly classifiable as "filtering or purifying machinery and apparatus, for liquids or gases" of heading 8421, of the Harmonized Tariff Schedule of the United States (HTSUS)—and not as "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included," of heading 3815, HTSUS, as Mitsubishi contends.  Specifically, the imported SCR catalyst blocks are apparatus for filtering or purifying gas because they are complex devices that perform the particular function of filtering or purifying flue gas by catalytically converting pollutants into less harmful substances.

Mitsubishi errs in its classification analysis because it focuses only on the classification of the catalyst components contained within the SCR catalyst blocks and not on the blocks themselves, which comprise the complete imported products.  Mitsubishi argues that the blocks do not physically extract substances from gas, but this point does not detract from the classification analysis because the process of purification, as anticipated by heading 8421, encompasses the chemical conversion of undesirable substances, which is the function of the SCR catalyst blocks.

Moreover, the SCR catalyst blocks are not properly classified under the basket provision of heading 3815, which describes "reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included."  Mitsubishi's arguments in favor of this provision are legally flawed as it misapplies the sequential order of the General Rules of

Interpretation (GRIs) of the tariff code by glossing over GRI 1 and jumping immediately to GRI 3(b). But GRI 3(b) is inapplicable here, because the blocks are described in whole only by heading 8421, pursuant to GRI 1.

Mitsubishi also errs in claiming that the merchandise qualifies for an exclusion from Section 301 duties. The exclusion covers only supported catalysts that have been applied to a stainless-steel mesh. But that describes only the catalyst element of the imported merchandise, which is just one of several components of the SCR catalyst blocks. Therefore, the exclusion does not cover the subject merchandise.

Accordingly, the Court should deny Mitsubishi's motion for summary judgment, grant the Government's cross-motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

## STATEMENT OF FACTS

The subject merchandise has been commercially referred to as SCR catalyst modules or SCR catalyst blocks. Def. SOF ¶ 2. The imported merchandise consists of two types of SCR catalyst blocks imported by Mitsubishi that use one of two general formulations: "CM" and TRAC". Def. SOF ¶ 24. Both formulations promote the conversion of nitrogen oxides and can also promote the conversion of elemental mercury to oxidized forms of mercury. Def. SOF ¶ 25. The TRAC formulation is designed for enhanced mercury oxidation. Def. SOF ¶ 26.

The following are a representative image and photograph depicting SCR catalyst blocks:

 

Def. SOF ¶¶ 4-5.

Although their dimensions vary, the blocks typically measure approximately one meter wide, by two meters long, by one and a half meters high. Def. SOF ¶ 6. Each block is composed of a steel block frame that houses approximately 16 catalyst units. Def. SOF ¶ 7. Catalyst units are square-shaped steel frames that each contain approximately 80 catalyst elements (also called catalyst plates). Def. SOF ¶ 8. Catalyst elements are stainless-steel mesh plates that have been coated on both sides with a chemical substance called a supported catalyst material ("supported SCR catalyst"). Def. SOF ¶ 9.

The following diagram illustrates an SCR catalyst block with its block frame, catalyst units, and catalyst elements:



Def. SOF ¶ 10.  In addition to the block frame, the catalyst units, and the catalyst elements, the

SCR catalyst blocks also include a protector, seal bars, a seal plate, and, depending on the

application, spacers.  Def. SOF ¶ 11.  This can be seen from the following top-view diagram of a

block:



Def. SOF ¶ 12.

SCR catalyst blocks require both their structural and chemical components to function in practice.  Def. SOF ¶ 48.  The supported SCR catalyst that coats the catalyst elements consists of two types of chemical compositions: (1) active catalytic chemical compounds on (2) a blended chemical support material.  Def. SOF ¶ 13.

The active catalytic chemical compounds are catalysts.  Def. SOF ¶ 14.  A catalyst is "[a] substance which when present in small amounts increases the rate of a chemical reaction or process but which is chemically unchanged by the reaction[.]"  *Catalyst*, OED.COM, https://www.oed.com/dictionary/catalyst_n?tab=meaning_and_use#10071260 (last visited Dec. 5, 2024).  For the imported merchandise, the active catalytic chemical compounds include vanadium pentoxide, molybdenum trioxide, tungsten trioxide, and phosphorus pentoxide.  Def. SOF ¶ 15.

The blended chemical support material can be thought of as a highly porous "ceramic" material.  Def. SOF ¶ 18.  The blended chemical support material provides a foundation for the active catalytic chemical compounds and creates a high surface area, due to its high porosity, for process gas diffusion and subsequent chemical reactions.  Def. SOF ¶ 19.  The blended chemical support material includes titanium dioxide, silicon dioxide, aluminum dioxide, and aluminosilicate ceramic fiber.  Def. SOF ¶ 20.

The SCR catalyst blocks' active chemical compounds catalyze the reaction of nitrogen oxides present in flue gas (exhaust gas, typically from a boiler) with ammonia ($NH_3$) in the presence of oxygen to convert the nitrogen oxides into nitrogen and water.  Def. SOF ¶¶ 16, 29.  Nitrogen oxide emissions are harmful to the environment because they contribute to smog and acid rain, and they are directly harmful to human health as well.  Def. SOF ¶¶ 32-33.  But the

nitrogen and water emissions resulting from the conversion of nitrogen oxides within the SCR

catalyst blocks are harmless.  Def. SOF ¶ 46.

    The active catalytic chemical compounds also promote the conversion of elemental

mercury present in flue gas into oxidized forms of mercury.  Def. SOF ¶ 17.  Mercury emissions,

like nitrogen oxide emissions, are harmful to human health, wildlife, and ecosystems.  Def. SOF

¶ 66.  The SCR catalyst blocks' conversion of elemental mercury into oxidized forms facilitates

the removal of mercury from flue gas.  Def. SOF ¶ 69.

    This description of the function of the merchandise is also reflected in the patents

covering the catalysts contained within the imported SCR catalyst blocks.  Two patents cover the

two models at issue.  Def. SOF ¶ 75.  U.S. Patent No. 8,470,728, entitled "Exhaust Gas Purifying

Catalyst," Def. SOF ¶ 76, describes the catalyst as "an exhaust gas purifying catalyst; in

particular, an exhaust gas purifying catalyst which maintains . . . an activity of oxidizing

elemental mercury (Hg) contained in coal combustion exhaust gas, as well as an activity of

reducing nitrogen oxides contained in the gas by ammonia . . . ."  Def. SOF ¶ 77.  The second

patent, U.S. Patent No. 10,898,881, titled "Catalyst for Metal Mercury Oxidation Reactions and

Nitrogen Oxide Reduction Reactions, and Exhaust Gas Purification Method," Def. SOF ¶ 79,

describes the catalyst as "a catalyst for oxidation reaction of metallic mercury and reduction

reaction of nitrogen oxide, . . . as well as a method for purifying exhaust gas, which comprises

oxidizing metallic mercury and reducing nitrogen oxide."  Def. SOF ¶ 80.

    The SCR catalyst blocks can be used to reduce nitrogen oxide and elemental mercury

emissions from flue gas to meet emissions requirements.  Def. SOF ¶¶ 31, 67.  At a plant, this is

accomplished by incorporating SCR catalyst blocks into SCR systems.  Def. SOF ¶¶ 39, 60.

SCR systems process flue gas (exhaust gas, typically from a boiler) emitted by power plant boilers and other combustion sources.  Def. SOF ¶¶ 29–30.  SCR systems are large and typically include, among other things, an inlet duct, an ammonia injection system, a mixing system, an SCR reactor (which, as discussed further below, houses the SCR catalyst blocks), and an outlet duct.  Def. SOF ¶ 34.

The following is a representative diagram of an SCR system:



Def. SOF ¶ 35.

SCR catalyst blocks are installed into SCR reactors of SCR systems.  Def. SOF ¶ 39.  An SCR reactor may contain hundreds of SCR catalyst blocks arranged in multiple layers.  Def. SOF ¶ 40.  The following photograph depicts SCR catalyst blocks, as seen from above, that have been installed in a layer within an SCR reactor:



Def. SOF ¶ 41.

During the operation of a typical SCR system, the flue gas to be treated enters through an inlet duct. Def. SOF ¶ 36. An ammonia injection grid then sprays ammonia into the flue gas and a mixing system mixes the ammonia and nitrogen oxides together. Def. SOF ¶ 37. The flue gas then flows into the SCR reactor. Def. SOF ¶ 38. Within the SCR reactor, the flue gas is directed through the SCR catalyst blocks, which are responsible for converting nitrogen oxides into nitrogen and water and elemental mercury into oxidized forms. Def. SOF ¶¶ 39, 42, 68–71. As it travels through the SCR catalyst blocks, the flue gas diffuses through the supported SCR catalyst coating the SCR catalyst blocks' catalyst elements. Def. SOF ¶ 43. The supported SCR catalyst then accelerates the conversion of nitrogen oxides and elemental mercury, as previously described. Def. SOF ¶¶ 16–17, 44, 68–71. The treated flue gas then exits the SCR system through an outlet duct. Def. SOF ¶ 45. The SCR catalyst blocks within an SCR reactor can reduce the amount of nitrogen oxides in flue gas by eighty percent or more. Def. SOF ¶ 47.

SCR systems are in turn used as components of larger air quality control systems (AQCSs), which is a term used to describe the suite of air quality controls for a given operating unit and captures the collection of systems related to the control of regulated constituents, such as nitrogen oxides, particulates, and sulfur dioxide. Def. SOF ¶ 60. The composition of AQCSs differs among facilities, but for a commercial coal-fired boiler, a typical AQCS may include an SCR system, a particulate collection device (such as an electrostatic precipitator (ESP) or a fabric filter (FF)), and a flue gas desulfurization system (FGD). Def. SOF ¶ 61. The different component systems within an AQCS typically serve different functions. Def. SOF ¶ 62. The SCR system, as discussed, reduces the amount of nitrogen oxides in flue gas by converting it to nitrogen and water; the ESP and FF reduce the amount of solid particulates in the flue gas; and the FGD primarily reduces the amount of sulfur dioxide in the flue gas. Def. SOF ¶ 63. The SCR system can be used together with an ESP and FGD to reduce the amount of mercury in flue gas through a multistep process that begins with the conversion of elemental mercury to oxidized forms by the SCR Catalyst Blocks. Def. SOF ¶¶ 65, 68–72. The following illustration depicts an example AQCS that includes, among other components, an SCR system, a particulate collection device (labeled ESP/FF), and an FGD:



Def. SOF ¶ 64.

Mitsubishi has marketed its SCR catalyst blocks and SCR systems for their ability to remove nitrogen oxides from flue gas or to reduce the amount of nitrogen oxides in flue gas. Def. SOF ¶ 73. Mitsubishi has also advertised its SCR catalyst blocks for their ability to facilitate the removal of mercury from flue gas or to reduce the amount of mercury in flue gas. Def. SOF ¶ 74. The terms "NOx destruction", "NOx removal," and "deNOx" are used interchangeably and frequently in the field of SCR technology to describe the catalytic conversion of nitrogen oxides in flue gas into nitrogen and water. Def. SOF ¶ 84.

## ENTRY OF MERCHANDISE AND ADMINISTRATIVE BACKGROUND

Mitsubishi entered the merchandise under the cover of 96 entries made at various ports of entry between July 2018 and September 2020. *See* ECF Nos. 12-26. The SCR catalyst blocks are products of China. Def. SOF ¶ 3. At liquidation, U.S. Customs and Border Protection (Customs or CBP) classified the blocks as "filtering or purifying machinery and apparatus, for liquids or gases . . . : Filtering or purifying machinery and apparatus for gases: Other: Catalytic converters" under subheading 8421.39.40, HTSUS (which is duty-free under the column 1

general rate), and assessed Section 301 duties under secondary heading 9903.88.01, HTSUS (at 25 percent *ad valorem*).  ECF No. 10.

Mitsubishi protested this classification, claiming that the merchandise is properly classified under subheading 3815.19.00, HTSUS, duty-free.  *Id.*  The subheading provides for "Reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: Supported Catalysts: Other."  Mitsubishi then further claimed that classification of the subject merchandise under subheading 3815.19.00 does not subject it to Section 301 duties under secondary heading 9903.88.03, HTSUS, based on exclusions issued by the Office of the United States Trade Representative (USTR) on May 8, 2020, and August 11, 2020 which apply to imported goods classified under subheading 3815.19.00.  *See id.*

Customs denied the protest and issued ruling HQ H311223 (Apr. 19, 2021), which explains that the subject merchandise is a filtering or purifying apparatus for gases under the terms of heading 8421, and therefore is classified under that heading and cannot be classified under heading 3815, which is a basket provision that only applies to articles that are "not elsewhere specified or included."

Mitsubishi, thereafter, commenced suit to obtain a judgment from the Court regarding the classification of the merchandise.  ECF Nos. 10-11.

**QUESTION PRESENTED**

(1)     Mitsubishi claims that the merchandise is properly classified as "Reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: Supported catalysts: Other," of subheading 3815.19.00, HTSUS.  Mitsubishi also claims that the merchandise qualifies for an exclusion of Section 301 duties under either of the two following provisions under secondary heading 9903.88.03:

a.     "Plate-type supported catalysts (reaction accelerators) for reduction of nitrous oxides (NOx) with enhanced mercury oxidation, with oxides of base metals being the active substances, applied to a stainless steel mesh (described in statistical reporting number 3815.19.0000)," of secondary heading 9903.88.46 (for entries between September 24, 2018, and August 7, 2020) or secondary heading 9903.88.56 (for entries after August 7, 2020); or

b.     "Plate-type supported catalysts (reaction accelerators) for reduction of nitrous oxides (NOx), with base metals being the active substances, applied on a titanium dioxide based ceramic material to a stainless steel mesh (described in statistical reporting number 3815.19.0000)," of secondary heading 9903.88.46 (for entries between September 24, 2018, and August 7, 2020) or secondary heading 9903.88.56 (for entries after August 7, 2020).

(2)     Defendant will show that the merchandise is properly classified as "filtering or purifying machinery and apparatus, for liquids or gases; parts thereof: Filtering or purifying machinery and apparatus for gases: Other: Other," of subheading 8421.39.80. This provision carries additional duties pursuant to Section 301 for articles from China entered beginning on July 6, 2018, under secondary heading 9903.88.01.

## SUMMARY OF ARGUMENT

The imported SCR catalyst blocks are properly classified under heading 8421, HTSUS, which describes "filtering or purifying . . . apparatus, for . . . gases." The blocks are apparatus—which is commonly defined as a set of equipment or complex device for performing a particular function. And they filter or purify flue gas by catalytically converting pollutants into less harmful substances. Mitsubishi challenges this classification, arguing that the blocks do not

13

physically extract substances from gas. But this point does not detract from the classification analysis. The process of purification, as anticipated by heading 8421, encompasses the chemical conversion of undesirable substances, which is the function of the imported SCR catalyst blocks.

Moreover, the blocks are not properly classified under heading 3815, which is a basket provision that describes "reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included." Mitsubishi's arguments in favor of this provision are legally flawed as it misapplies the sequential order of the GRIs of the tariff code. Mitsubishi glosses over GRI 1 and jumps immediately to GRI 3(b). But GRI 3(b) is inapplicable here, because the blocks are described in whole by heading 8421, pursuant to GRI 1.

Finally, no Section 301 exclusions apply to the SCR catalyst blocks. Although these exclusions were issued at Mitsubishi's request, the written descriptions in the exclusions govern, and these descriptions do not encompass the SCR catalyst blocks because they describe only one component of the blocks—their catalyst elements—and are premised on classification under heading 3815, which is inapplicable.

Accordingly, the Court should deny Mitsubishi's motion for summary judgment, grant the Government's cross-motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

## **ARGUMENT**

### I.    **Standard Of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a). Because there is no genuine dispute as to any material facts, the classification of the subject merchandise depends on the meaning of the relevant tariff terms,

which is a question of law. *Wilton Indus. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013) (citations omitted). "To determine the meaning of and apply a tariff term to the facts, the court applies the General Rules of Interpretation ('GRIs') . . . ." *Ildico Inc. v. United States*, 2024 WL 4648084, at *3 (Ct. Int'l Trade Nov. 1, 2024) (citation omitted). "The court applies the GRIs in numerical order and only continues to a subsequent GRI if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI." *Id.* (quotation omitted). Under GRI 1, classification must "be determined according to the terms of the headings and any relative section or chapter notes." This applies to Chapter 99, too, which is where all the Section 301 exclusions are found. "Unless the context requires otherwise, the general notes and rules of interpretation, the section notes, and the notes in chapters 1 through 98 apply to the provisions of this chapter." U.S. Note 2 to Chapter 99. "The HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries presented by GRI 3." *Telebrands Corp. v. United States*, 865 F.Supp.2d 1277, 1280 (Ct. Int'l Trade 2012) (footnotes omitted), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013).

When "a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." *Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (citations omitted). To determine a tariff term's common meaning, the Court may "consult lexicographic and scientific authorities, dictionaries, and other reliable information," in addition to relying on its "own understanding of the terms used." *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1338 (Fed. Cir. 1999) (citation omitted). "The court will also consider the Explanatory Notes ('ENs') to the HTS in interpreting the HTSUS terms." *Ildico*, 2024 WL 4648084, at *3 (citing *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed. Cir.

1999)).  "Although the ENs are not dispositive of the meaning of the tariff terms, they are 'generally indicative of [the] proper interpretation of the various provisions' and so are persuasive on the international meaning of the tariff terms."  *Id.* (quoting *Carl Zeiss*, 195 F.3d at 1378 n.1).

## II.   The SCR Catalyst Blocks Are "Filtering Or Purifying . . . Apparatus, For . . . Gases," Of Heading 8421

The imported SCR catalyst blocks are properly classified under heading 8421, which describes "filtering or purifying . . . apparatus, for . . . gases."  As we demonstrate further below, the blocks are apparatus, which are commonly defined as complex devices that perform a particular function.  And they filter or purify gases; specifically, when flue gas passes through, nitrogen oxides and elemental mercury are removed through chemical reactions.  That makes the SCR catalyst blocks filtering or purifying apparatus for gases—just like a car's catalytic converter—as the Explanatory Notes confirm.

### A.   The SCR Catalyst Blocks Are Apparatus—A Set Of Equipment Or Complex Device For Performing A Particular Function

First, the SCR catalyst blocks constitute "apparatus."  The common meaning of "apparatus", as relevant here, is "a set of materials or equipment designed for a particular use," or "an instrument or appliance designed for a specific operation."  *Apparatus*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/apparatus (last visited Dec. 5, 2024).  This interpretation is supported by the Court's decision in *Trijicon, Inc. v. United States*, 686 F.Supp.3d 1336, 1344 (Ct. Int'l Trade 2024), which defined the term as "equipment designed specifically to carry out a particular function" or "any complex device or machine for a specific use."  (internal quotations omitted); *see also Continental Automotive Systems, Inc. v. United States*, 589 F.Supp.3d 1215, 1218-1225 (Ct. Int'l Trade 2022) (holding that the imported

NOx Sensor Probes, commonly used in a selective catalytic reduction system to condition a vehicle's exhaust gas to remove pollutants, were gas or smoke analysis apparatus).

The SCR catalyst blocks are described by the common meaning of "apparatus."  The blocks comprise a set of equipment—the block frame, the catalyst unit frames for 16 catalyst units, the stainless-steel mesh of 80 catalyst elements within each of the catalyst units, the seal bars, the seal plates, the protectors, and the spacers—specifically designed to catalyze the reduction of nitrogen oxides and the oxidation of elemental mercury in flue gas.   Def. SOF ¶¶ 7-12, 16-17.  For similar reasons, the SCR catalyst blocks are also complex devices for a specific use.  *See* Def. SOF ¶ 48.  The blocks' components are not just a few "easily . . . disentangled" materials that have been "coordinated", see *Trijicon*, 686 F.Supp.3d at 1345 (providing the definition of a complex device as consisting "of parts or elements not simply co-ordinated, but some of them involved in various degrees of subordination; complicated, involved, intricate; or not easily analysed or disentangled") (internal citation omitted), but rather they comprise an "intricate" (686 F.Supp.3d at 1345) array of physical structures and synthesized chemical preparations specially designed to filter or purify flue gas.  *See* Def. SOF ¶¶ 48-59.  The common meaning of the tariff terms shows that the SCR catalyst blocks are "apparatus", and Mitsubishi does not challenge that the blocks are considered apparatus.  *See* Pl. Br. (ECF No. 55), 29–34 (challenging the position in CBP's ruling that the blocks "filter" or "purify", but not that they are "apparatus").

### B.  The SCR Catalyst Blocks Filter Or Purify Gases By Converting Harmful Substances Into Innocuous Ones

Second, the SCR catalyst blocks "filter[] or purify[] . . . gases."  Heading 8421.  The verb "filter" is commonly defined as "to subject to the action of a filter" or "to remove by means of a filter".  *Filter*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/filter

(last visited Dec. 5, 2024). Similarly, the verb "purify", as relevant here, is commonly defined as "to free from undesirable elements". *Purify*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/filter (last visited Dec. 5, 2024). If an imported good "eliminate[s] unwanted properties" from a substance, then it is also freeing the substance from undesirable elements, and therefore purifying within the meaning of heading 8421. *Franklin v. United States*, 289 F.3d 753, 759 (Fed. Cir. 2002); *Noss Co. v. United States*, 588 F.Supp. 1408, 1412 n.4 (Ct. Int'l Trade 1984) (noting that "'purify' and 'filter' can be used [synonymously]"), *aff'd*, 753 F.2d 1052 (Fed. Cir. 1985). That is precisely the function of the SCR catalyst blocks. They catalytically convert unwanted or undesirable nitrogen oxides and elemental mercury in flue gas, replacing them with nitrogen, water, and oxidized mercury. Def. SOF ¶¶ 16-17. Indeed, Mitsubishi specifically markets its SCR catalyst blocks as capable of reducing or removing unwanted nitrogen oxides and elemental mercury from flue gas. Def. SOF ¶¶ 73-74. And the patents covering the catalysts used in the SCR catalyst blocks state that the catalysts "purify" flue gas through the catalytic conversion of nitrogen oxides and elemental mercury. Def. SOF ¶¶ 75-83. Accordingly, the plain language of heading 8421 covers the SCR catalyst blocks.

Classifying the imported merchandise under heading 8421 is further supported by the Explanatory Notes. The Explanatory Notes clarify that "[m]uch of" the apparatus of heading 8421 "is purely static equipment with no moving parts. The heading covers filters and purifiers of *all types* (physical or mechanical, *chemical*, magnetic . . . , etc.)." Explanatory Note 84.21(II) (emphasis added). Apparatus for filtering or purifying gases include "chemical filters and purifiers for air or other gases (including catalytic converters which change carbon monoxide in the exhaust gases of motor vehicles)." Explanatory Note 84.21(II)(B)(4). In other words, "apparatus" of heading 8421, like the SCR catalyst blocks, typically are "purely static equipment

with no moving parts." They, like the SCR catalyst blocks, may filter or purify through "chemical" means. And they, like the SCR catalyst blocks, can filter or purify exhaust gases through the catalytic conversion of a harmful substance into a less harmful one. The Explanatory Notes thus reinforce that, like catalytic converters for cars, SCR catalyst blocks are filtering or purifying apparatus for gases.

### C.  Mitsubishi's Interpretation Of The Verb "Purify" Is Not Supported By The Common Meaning Of The Tariff

Mitsubishi's sole argument against classification under heading 8421 is that its SCR catalyst blocks do not "remove" anything from flue gas. Pl. Br., 29–34. This argument is flawed as it is based on improper interpretations of the verb "purify" as well as of the Explanatory Notes and case law.

Although Mitsubishi also cites Merriam-Webster's definition of "purify"—"to free from undesirable elements"—it incorrectly interprets this definition as somehow requiring a physical removal of mass from a substance, when nothing in that definition establishes that limitation. Pl. Br., 31-32. This interpretation is flawed as Mitsubishi misunderstands what it means to "free from undesirable elements" through purification. Moreover, as the court in *Franklin* explains, and the Explanatory Note confirms, purification can occur through a chemical reaction that converts something unwanted into something innocuous—not just through physical extraction that puts an undesirable substance somewhere else. For example, the process of adding substances to water to kill bacteria and neutralize chlorine equally constitutes purification, in the same fashion as the process of physically removing bacteria and chlorine from water and putting it elsewhere. *Franklin*, 289 F.3d at 755, 759. The *Franklin* court also adopted the explanation from *Deringer v. United States*, 656 F.Supp. 670, 671 (Ct. Int'l Trade 1986), that while excess water in raw maple sap used in making syrup may not be an impurity in the classical sense, it

19

was clear from testimony that it was an "unwanted constituent" in the raw maple sap, which was purified within the meaning of heading 8421. *Franklin*, 289 F.3d at 755, 758-759. Similarly, here, nitric oxides and mercury are "unwanted constituents" of flue gas that the SCR catalyst blocks convert into innocuous substances in order to reduce their presence in the exhaust gas. As such, "catalytic conver[sion]" that "*change[s]*" a pollutant like "carbon monoxide" in "exhaust gases" into less harmful substances also is purification. Explanatory Note 84.21(II)(B)(4) (emphasis added); *see also Catalytic converter*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/ dictionary/catalytic %20converter ("an automobile exhaust-system component containing a catalyst that causes conversion of harmful gases (such as carbon monoxide and uncombusted hydrocarbons) into mostly harmless products (such as water and carbon dioxide)"); *Continental*, 589 F.Supp.3d at 1218-1219 ("The most common application for the NOx sensor is in a selective catalytic reduction system, which conditions a vehicle's exhaust gas to remove pollutants before it is emitted."). That is exactly how the SCR catalyst blocks work, as Mitsubishi agrees. Pl. Br., 45 (explaining that the blocks "promote a chemical reaction that converts [nitrogen] oxide compounds into another structure that remains in the gas flow").

Significantly, the "expert report" that Mitsubishi relies on to suggest that its SCR catalyst blocks do not "purify" flue gas, Pl. Br. at 32–33, reads very much like another summary-judgment brief. The report's conclusions are based on erroneous legal analysis of tariff terms and the Explanatory Notes, rather than scientific method or experience. *See* Pl.'s Ex. 2, at 2–6. This is not appropriate for an expert witness. The Court is charged with interpreting the law, not the expert witness. *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge."

(citation omitted)).  Consequently, the report has little probative value.  *See, e.g.*, *Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017) ("[A]n expert may not . . . state legal conclusions drawn by applying the law to the facts." (quotation omitted)).  Furthermore, plaintiff's expert actually confirmed in his deposition that the term "NOx removal" is frequently used in the field of SCR technology.  Def. SOF ¶ 84.  As such, even in the SCR industry, the SCR catalyst blocks are considered to engage in removal of NOx from the flue gas, further confirming that the blocks are filtering or purifying apparatus of heading 8421.

As such, the SCR catalyst blocks are "filtering or purifying . . . apparatus, for . . . gases," of heading 8421, and specifically subheading 8421.39.80, which covers "Filtering or purifying machinery and apparatus for gases: Other: Other."  *See* GRI 6.  Proceeding from the four-digit level to the six-digit level, the blocks are not "centrifuges," "for liquids," or "parts," ruling out subheadings 8421.11 through 8421.29, and subheadings 8421.91 through 8421.99.  The term "centrifuge" means "a machine using centrifugal force for separating substances of different densities, for removing moisture, or for simulating gravitational effects."  *Centrifuge*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/centrifuge (last visited Dec. 6, 2024).  Based on the structure and function of these blocks, the blocks do not meet the definition of "centrifuge", and the facts establish that these are apparatus that filter or purify gases, not liquids.  *See* Def. SOF.  Nor do any of the facts about the blocks establish that they are "air filters"—defined as a filter that removes particles and impurities from the air—for "internal combustion engines"—defined as heat engines in which the combustion that generates the heat takes place inside the engine proper instead of in a furnace—thereby ruling out subheading 8421.31.  *Air filter*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/

air%20filter (last visited Dec. 6, 2024); *Internal combustion engine*, MERRIAM-WEBSTER.COM, https://www. merriam-webster.com/dictionary/internal%20combustion%20engine (last visited Dec. 6, 2024); *see also* Def. SOF.  This leaves only subheading 8421.39 ("Other") as the correct six-digit classification.

Finally, at the eight-digit level, although the blocks purify exhaust gas through catalytic conversion, the blocks themselves are not "catalytic converters" of subheading 8421.39.40 as that phrase is commonly understood, because a catalytic converter is "an *automobile* exhaust-system component," *Catalytic converter*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/catalytic%20converter (emphasis added), not a flue-gas purifying component for plants as the blocks are.  Accordingly, the appropriate eight-digit classification is subheading 8421.39.80 ("Other").

Lastly, HTSUS Chapter 99 Notes 20(a) and 20(b) instruct that articles from China that are classified under certain subheadings, including 8421.39.80, are further classified under secondary heading 9903.88.01.  *See* U.S. Notes 20(a) and 20(b) to Chapter 99, HTSUS. Therefore, because the SCR catalyst blocks are the product of China and are classified under subheading 8421.39.80, they are further classified under secondary heading 9903.88.01 and are thereby subject to Section 301 duties.

### III.    The SCR Catalyst Blocks Are Not "Reaction Initiators, Reaction Accelerators And Catalytic Preparations, Not Elsewhere Specified Or Included," Of Heading 3815

Mitsubishi claims that its SCR catalyst blocks are properly classified under heading 3815, HTSUS, which describes "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included."  Pl. Br., 19–22.  But heading 3815 is a basket provision that is only applicable to goods "not elsewhere specified or included."  And because, as shown above,

heading 8421 describes the SCR catalyst blocks in whole pursuant to GRI 1, the blocks are

"elsewhere specified or included"—specifically, in heading 8421—thus making heading 3815

inapplicable. *See Home Depot U.S.A., Inc. v. United States*, 915 F. 3d 1374, 1380 (Fed. Cir.

2019) (explaining that GRI 1 applies, and the succeeding GRIs are inoperative, when an article is

covered in whole by a single classification heading, and that GRI 3 only applies when goods are

*prima facie* classifiable under two or more headings). Moreover, even were heading 3815 not a

basket provision, classification under this heading is not supported by the plain meaning of the

terms of heading 3815, and to arrive at that classification, Mitsubishi misapplies the sequential

order of the GRIs.

### A. The SCR Catalyst Blocks Are Not Covered By The Plain Meaning Of The Terms Of Heading 3815

The SCR catalyst blocks are not classified under heading 3815 pursuant to GRI 1. As

noted, heading 3815 is a basket provision, and because pursuant to GRI 1, the blocks are

described in whole by heading 8421, they cannot be classified in heading 3815 pursuant to GRI

1. But even if heading 8421 did not cover the blocks (which it does), the blocks would not be

classified under heading 3815 pursuant to GRI 1 because the terms of heading 3815 do not

describe the SCR catalyst blocks in whole.

Mitsubishi does not dispute that heading 3815's description of "reaction accelerators and

catalytic preparations" applies only to chemical preparations like, for example, supported SCR

catalysts. Pl. Br., 19–22; *see* Explanatory Note 38.15 ("This heading covers *preparations* which

initiate or accelerate certain chemical processes.") (emphasis added). But the SCR catalyst

blocks are apparatus—comprised of 16 catalyst units, each of which contains 80 catalyst

elements, together with the block frame, a protector, seal bars, a seal plate, and, depending on the

application, spacers (Def. SOF ¶¶ 7-8, 11); as such, the blocks themselves contain catalytic

preparations. In other words, the SCR catalyst blocks are not preparations. Therefore, because heading 3815 describes only the catalytic preparations and not the entire SCR catalyst blocks, only if the preparations (within the SCR catalyst blocks) alone drive the classification could the entire blocks be classified in heading 3815. But because the SCR catalyst blocks are described in whole by heading 8421 pursuant to GRI 1, subsequent GRIs that might focus only on the preparations for the purpose of classification (such as GRI 3(b)) are inapplicable. *See* Pl. Br., 19–20.[1]

## B. Mitsubishi Misapplies The Sequential Order Of The GRIs

To support its classification, Mitsubishi misapplies the sequential order of the GRIs and jumps straight to GRI 3(b), arguing that the blocks are "composite goods" whose classification is controlled by "the material or component which gives them their essential character." *Id.* (quoting GRI 3(b)).

That is wrong. "The court applies the GRIs in numerical order and only continues to a subsequent GRI if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI." *Ildico Inc. v. United States*, 2024 WL 4648084, at *3 (Ct. Int'l Trade Nov. 1, 2024) (quotation omitted). And here, GRI 1 resolves the classification. For "[u]nder GRI 1, when an imported article is described *in whole* by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative." *Home Depot*, 915 F.3d at 1380 (quotation omitted) (emphasis added). Here, the imported articles are entire SCR catalyst blocks—not just the supported SCR catalysts within them. As

---

[1] Mitsubishi's complaint at times confusingly describes or refers to the entire SCR catalyst blocks as "Supported SCR Catalysts", which is inaccurate, because a supported catalyst consists of active catalytic chemical compounds on a blended chemical support material, and the supported catalysts are only one component of the SCR catalyst blocks. *See generally* Compl. (ECF No. 11); *see also* Def. SOF ¶ 13.

such, they are articles that are described *in whole* by heading 8421, but only *in part* by heading 3815.  Resort beyond GRI 1 is therefore inappropriate.

### C.  The Flawed Nature Of Mitsubishi's Classification Analysis Is Revealed By Its Application Of GRI 3(b)

The flawed nature of Mitsubishi's classification analysis is revealed by its application of GRI 3(b).  Resort to GRI 3(b) is only appropriate when "by application of [GRI] 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings[.]"  For GRI 3(b) to be applicable in this case, then, the SCR catalyst blocks must be *prima facie* classifiable under two or more headings.  But Mitsubishi fails to explain which two headings are applicable to the SCR catalyst blocks.  We anticipate, but cannot know for certain, that Mitsubishi may be of the view that the SCR catalyst blocks are *prima facie* classifiable under both heading 8421 and heading 3815.  But, as noted before, this argument is fatally flawed because heading 3815 *only* covers goods "not elsewhere specified or included" in the HTSUS.  Heading 3815, HTSUS ("Reaction initiators, reaction accelerators and catalytic preparations, *not elsewhere specified or included*." (emphasis added)).  And, if the SCR catalyst blocks are *prima facie* classifiable under heading 8421 (which we assume is the competing heading under Mitsubishi's GRI 3(b) analysis), then by operation of the carve out of heading 3815 (the language "not elsewhere specified or included"), the imported merchandise would be disqualified from classification under heading 3815.

Because Mitsubishi's claim for classification under heading 3815 rests entirely on the improper application of GRI 3(b), the SCR catalyst blocks cannot be classified under heading 3815.

IV.    **The SCR Catalyst Blocks Do Not Qualify For Exclusions From Section 301 Duties**

Finally, the SCR catalyst blocks are also not classifiable under two secondary headings of Chapter 99 which provide exclusions from Section 301 duties.  Although Mitsubishi requested these exclusions, their written descriptions do not cover SCR catalyst blocks.

A.  **The Product-Specific, Written Descriptions Of Section 301 Exclusions Govern—Not Product Descriptions Provided In Exclusion Requests**

Section 301 of the U.S. Trade Act of 1974, 19 U.S.C. § 2411, authorizes the President and USTR to take action to eliminate certain acts, policies, or practices of a foreign government that burden U.S. commerce.  *See* 19 U.S.C. § 2411.  Under this authority, in August 2017, USTR began investigating certain trade practices of the People's Republic of China.  USTR found that some of those trade practices "related to intellectual property, innovation, and technology were unreasonable or discriminatory, and burden[ed] or restrict[ed] U.S. commerce."  U.S. Gov't Accountability Off., GAO-21-506, Report to Congressional Requesters: U.S. Trade 3 (2021).  "To help obtain the elimination of" those trade practices, USTR, "at the direction of the President, placed additional tariffs on certain products from China starting in July 2018."  *Id.* at 1.

But USTR also established a process by which interested parties may request that particular products classified under a secondary tariff heading subject to Section 301 duties be excluded from those duties.  *See Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 27,489, 27,489–90 (USTR May 8, 2020) ("*Exclusion Notice*").  These product-specific exclusions were "available for any product that meets the description in the Annex [to the Federal Register notices], regardless of whether the importer filed an exclusion request."  *Id.* at

27,490; *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600, 48,601 (USTR Aug. 11, 2020) ("*Extension Notice*").  "[T]he scope of each exclusion," however, "is governed by the scope of" the "product descriptions in the Annex"—"not by the product descriptions" provided in "any particular request for exclusion."  *Exclusion Notice*, 85 Fed. Reg. at 27,490; *Extension Notice*, 85 Fed. Reg. at 48,601 (also noting that the scope of the exclusion is "governed by the scope of the ten-digit HTSUS headings" listed in the Annex).

### B.  The Exclusions, As Written, Do Not Cover The SCR Catalyst Blocks

Here, Mitsubishi claims its SCR catalyst blocks meet the descriptions of two exclusions set forth in the Annexes to the *Exclusion Notice* and *Extension Notice*, and incorporated into the HTSUS via secondary headings 9903.88.46 and 9903.88.56: "Plate-type supported catalysts (reaction accelerators) for reduction of nitrous oxides (NOx)," "applied" to "a stainless steel mesh (described in statistical reporting number 3815.19.0000)."  Despite the fact that Mitsubishi itself requested these exclusions, the description, as written, does not cover the SCR catalyst blocks.

First, the SCR catalyst blocks do not meet the written description of the exclusions because they are not "described in statistical reporting number 3815.19.0000."  As explained above, the blocks are not classifiable under heading 3815.  They cannot, therefore, be described in any subheading or statistical reporting number nested beneath that heading.

Second, even if we assume for the sake of argument that the SCR catalyst blocks are classifiable under statistical reporting number 3815.19.0000 (which they are not), the SCR catalyst blocks *still* do not meet the terms of the exclusions.  As written, the exclusions cover *only* the catalyst elements within the SCR catalyst blocks: "Plate-type *supported catalysts*

(reaction accelerators) for reduction of nitrous oxides (NOx) with enhanced mercury oxidation, with oxides of base metals being the active substances, applied to a stainless steel mesh (described in statistical reporting number 3815.19.0000)," or "[p]late-type *supported catalysts* (reaction accelerators) for reduction of nitrous oxides (NOx), with base metals being the active substances, applied on a titanium dioxide based ceramic material to a stainless steel mesh (described in statistical reporting number 3815.19.0000)."  9903.88.03, HTSUS (emphasis added).

Recall that the catalyst elements are the stainless-steel mesh plates that have been coated on both sides with a supported SCR catalyst.  Def. SOF ¶ 9.  Each SCR catalyst block, by contrast, consists of 16 catalyst units, each of which contains 80 catalyst elements, together with the block frame, a protector, seal bars, a seal plate, and, depending on the application, spacers. Def. SOF ¶¶ 7-8, 11.  But the exclusions cover only "supported catalysts" that have been "applied" to "a stainless steel mesh."  A supported catalyst consists of active catalytic chemical compounds on a blended chemical support material.  Def. SOF ¶ 13.  As such, the term "supported catalyst" describes only the catalytic chemical compounds on a chemical support material that form part of the catalyst elements, and not the entire SCR catalyst block (which is the imported merchandise).  And because the exclusions cover just one component of an SCR catalyst block, rather than the SCR catalyst block as a whole, they are inapplicable.  *See, e.g.*, *Prysm, Inc. v. United States*, 2019 WL 6332638, at *4 n.9 (Ct. Int'l Trade Nov. 26, 2019) (explaining that no inquiry into the potential applicability of heading 8543, which covers "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof," was necessary because heading 8528 wholly described the subject products and the parties agreed that the products were imported as complete units);

*Russ Berrie & Co., Inc. v. United States*, 329 F.Supp.3d 1345, 1375–76 (Ct. Int'l Trade 2018) (headings that "do not describe the entire article but only a part thereof" are inapplicable under GRI 1).

For both these reasons, the SCR catalyst blocks do not meet the descriptions set forth in secondary headings 9903.88.46 and 9903.88.56, and are thus not excluded from Section 301 duties.

## C. There Is No Legal Basis For The Alternative Remedy Requested by Mitsubishi— The Request For An Order From The Court To Rewrite The Exclusions

Should the Court agree that the plain language of the exclusions not apply to the imported merchandise, as an alternative remedy, Mitsubishi requests that USTR "be directed to retroactively revise the exclusion language to indicate the correct subheading." Pl. Br., 28.

As a preliminary matter, this request is outside the scope of the Court's jurisdiction for this case. Mitsubishi has brought this case under 28 U.S.C. § 1581(a). Summons, ECF No. 10. As such, this case is confined to the specific issue that has been protested, which is CBP's classification decision regarding the subject merchandise—not USTR's drafting of the exclusions. *See, e.g., Davies v. Arthur*, 96 U.S. 148, 149 (1878) ("An importer, having set forth in his written protest the ground of his objection to the payment of customs duties exacted by the collector, cannot, in his suit against the latter, recover them upon any ground other than that so set forth."); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1366 (Fed. Cir. 2006) (citing to *Davies*, 96 U.S. at 152-53, the Court stated that a valid protest must contain a distinct and clear specification of each substantive ground of objection so as to show that the objection taken at trial was at the time in the mind of the importer; where a claim is not set forth in a valid protest, the court has no jurisdiction over it). Further, the drafting of USTR's exclusions is not a protestable decision subject to remediation through the statutory protest mechanism of 19 U.S.C.

§§ 1514(a) and 1515.  Thus, the Court lacks jurisdiction pursuant to 28 U.S.C. § 1581(a) over any claims related to USTR's drafting of the exclusions and may not grant the relief of revising the exclusion language.

Second, even assuming *arguendo* that there is appropriate jurisdiction to consider Mitsubishi's complaint regarding the language of the exclusions (which there is not), Mitsubishi argues that the exclusions were issued at its request and therefore should apply to the subject merchandise.  Pl. Br., 23–29.  But this argument is unavailing.  As USTR explained in the *Exclusion Notice* and *Extension Notice*, "the scope of each exclusion" is "governed by the scope of" the "product descriptions in the Annex" and "not by the product descriptions" provided in "any particular request for exclusion."  *Exclusion Notice*, 85 Fed. Reg. at 27,490; *Extension Notice*, 85 Fed. Reg. at 48,601.  Mitsubishi cannot, therefore, expand the exclusions' scope by relying on its request, nor is Mitsubishi's role in making the request relevant to the interpretation and application of the plain language of the exclusions.

Mitsubishi's appeal to equity, Pl. Br. at 28–29, also falls flat.  There is no evidence in the record showing a drafting error for the exclusion, and any purported error as implied by Mitsubishi (which there is none) could be attributable to Mitsubishi or any other number of considerations.  Regardless, as noted above, the reasons behind the drafting of the exclusions are not relevant because the application of each exclusion is governed by the scope of the product descriptions in the Annex and not by the product descriptions provided in any particular request for exclusion, such as Mitsubishi's request.

Finally, as Mitsubishi acknowledges, there is an administrative process available to Mitsubishi for revising exclusion language to correct alleged errors.  Pl. Br., 28–29 (collecting examples).  If USTR's exclusion language truly were erroneous, then that is where Mitsubishi's

remedy lies—with the administrative process at USTR.  Notably, however, Mitsubishi has not presented any evidence indicating that it availed itself of such a process and made requests to USTR to revise the exclusions at or near the time when they were initially issued in 2020, or even at any time thereafter before the filing of the complaint in this action.

For this case, it is Customs, not USTR, who must interpret and apply USTR's exclusions as written, and Customs cannot rewrite them to effect what a particular importer believes was the intent based on the importer's exclusion request.  So too must this Court interpret and apply the tariff schedule as written.  *See, e.g.*, *Brown Grp. Inc. v. United States*, 17 C.I.T. 919, 921 (1993) ("If the drafters of the statute erred it is up to Congress to correct the error.  The court declines to rewrite the intricate footwear provisions of the tariff laws.").  Consequently, Mitsubishi cannot rely on principles of equity for the Court to rewrite exclusions that do not cover the subject merchandise.

## CONCLUSION

For these reasons, the Court should deny Mitsubishi's motion for summary judgment, grant the Government's cross-motion for summary judgment, enter judgment in the Government's favor, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

*Of Counsel*:                                /s/ Brandon A. Kennedy
Michael Anderson                       BRANDON A. KENNEDY
General Attorney                         Trial Attorney
Office of the Assistant Chief Counsel    Civil Division, U.S. Dept. of Justice
International Trade Litigation          Commercial Litigation Branch
U.S. Customs and Border Protection      26 Federal Plaza, Room 346
New York, New York 10278               New York, New York 10278
                                        Tel.: (212) 264-9230
                                        *Attorneys for Defendant*

Dated: December 13, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

     *Plaintiff,*

   v.             Court No. 21-00573

UNITED STATES,

     *Defendant.*

## CERTIFICATE OF COMPLIANCE

   I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 8,255 words.

            /s/ Brandon A. Kennedy
            BRANDON A. KENNEDY