## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Court No. 21-00573

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

BRETT A. SHAMUTE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:
Michael Anderson
General Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection
New York, New York 10278

BRANDON A. KENNEDY
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
*Attorneys for Defendant*

Dated: February 7, 2025

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.   The SCR Catalyst Blocks Are "Filtering Or Purifying . . . Apparatus, For. . . Gases," Of
     Heading 8421 ............................................................................................................... 3

     A.   The SCR Catalyst Blocks Are Apparatus—A Set Of Materials, Equipment, Instrument, Or
          Appliance Designed For A Particular Use Or A Specific Operation................................. 3

     B.   The SCR Catalyst Blocks Filter Or Purify Gases By Converting Harmful Substances Into
          Innocuous Ones ................................................................................................................ 7

II.  The SCR Catalyst Blocks Are Not "Reaction Initiators, Reaction Accelerators And
     Catalytic Preparations, Not Elsewhere Specified Or Included," Of Heading 3815 ............ 10

     A.   SCR Catalyst Blocks Are Not Covered By The Plain Meaning Of The Terms Of
          Heading 3815 ................................................................................................................. 11

     B.   Mitsubishi Misapplies The Sequential Order Of The GRIs .......................................... 12

     C.   The Flawed Nature Of Mitsubishi's Classification Analysis Is Revealed By Its
          Application Of GRI 3(b) .................................................................................................. 13

     D.   Additional U.S. Rule Of Interpretation ("ARI") 1(c) Does Not Apply Because The SCR
          Catalyst Blocks Are Classified As Filtering or Purifying Apparatuses Of Heading 8421—
          Not As "Parts" ................................................................................................................ 13

III. The SCR Catalyst Blocks Do Not Qualify For Exclusions From Section 301 Duties........ 15

     A.   The Product-Specific, Written Descriptions Of Section 301 Exclusions Govern—Not
          Product Descriptions Provided In Exclusion Requests ................................................. 15

     B.   The Exclusions, As Written, Do Not Cover The SCR Catalyst Blocks ......................... 16

IV.  There Is No Legal Basis For The Alternative Remedy Requested By Mitsubishi Involving
     Equitable Estoppel.......................................................................................................... 18

     CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Brown Grp. Inc. v. United States*,
   17 C.I.T. 919 (1993) ............................................................................... 22

*CamelBak Prods., LLC v. United States*,
   649 F.3d 1361 (Fed. Cir. 2011) ............................................................... 11

*Continental Automotive Systems, Inc. v. United States*,
   589 F.Supp.3d 1215 (Ct. Int'l Trade 2022) .............................................. 3

*Davies v. Arthur*
   96 U.S. 148 (1878) ................................................................................... 18

*Franklin v. United States*,
   289 F.3d 753 (Fed. Cir. 2002) ............................................................... 2, 7

*Home Depot U.S.A., Inc. v. United States*,
   915 F.3d 1374 (Fed. Cir. 2019) ........................................................... 10, 11

*Ildico Inc. v. United States*,
   2024 WL 4648084 (Ct. Int'l Trade Nov. 1, 2024) ................................... 12

*Keystone Automotive Operations, Inc. v. United States*,
   732 F.Supp.3d 1339 (Ct. Int'l Trade 2024) ............................................. 19

*Noss Co. v. United States*,
   588 F.Supp. 1408 (Ct. Int'l Trade 1984)

   *aff'd*, 753 F.2d 1052 (Fed. Cir. 1985) ...................................................... 2

*Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.*,
   858 F.3d 1324 (10th Cir. 2017) ................................................................. 8

*Prysm, Inc. v. United States*,
   2019 WL 6332638 n.9 (Ct. Int'l Trade Nov. 26, 2019) ........................... 17

*Russ Berrie & Co., Inc. v. United States*,
   329 F.Supp.3d 1345 (Ct. Int'l Trade 2018) ............................................. 18

*Saab Cars USA, Inc. v. United States*,
   434 F.3d 1359 (Fed. Cir. 2006) ................................................................ 18

*Sharp Microelectronics Tech., Inc. v. United States*,
   122 F.3d 1446 (Fed. Cir. 1997) ........................................................... 14, 15

*Trijicon, Inc. v. United States*,
 686 F.Supp.3d 1336 (Ct. Int'l Trade 2024) .......................................................... 3

*United States v. Caputo*,
 517 F.3d 935 (7th Cir. 2008) ............................................................................... 8

**Statutes**

19 U.S.C. § 1514(a) .............................................................................................. 18

19 U.S.C. § 1515 ................................................................................................... 18

19 U.S.C. § 2411 ................................................................................................ 1, 15

28 U.S.C. § 1581(a) .......................................................................................... 18, 21

Section 301 of the Trade Act of 1974, Pub. L. 93-618 ....................................... *passim*

**Regulations**

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology
 Transfer, Intellectual Property, and Innovation*,
 85 Fed. Reg. 27,489, 27,489–90 (USTR May 8, 2020) ............................... 16, 18, 19

**Harmonized Tariff Schedule of the United States**

Additional U.S. Rule Of Interpretation 1(c) ..................................................... 13, 14

General Rule of Interpretation 1 ....................................................................... *passim*

General Rule of Interpretation 3 ............................................................................ 10

General Rule of Interpretation 3(a) ............................................................ 11, 12, 13, 15

General Rule of Interpretation 3(b) ............................................................... 2, 12, 13

Chapter 38

 Heading 3815 ................................................................................................ *passim*

  Subheading 3815.19.0000 ............................................................................ 1, 17

Section XVI

Note 2(a) to Section XVI ....................................................................................... 13

Chapter 84 ...................................................................................................................... 13

Explanatory Note 84.21 (II)............................................................................................ 6

Explanatory Note 84.21 (II)(B)(4) .............................................................................. 6, 8

    Heading 8421 .....................................................................................................*passim*

      Subheading 8421.39.80 .......................................................................... 10

    Heading 8470 - 8472 ................................................................................... 14

    Heading 8473 .........................................................................................14, 15

Chapter 85

    Heading 8528 ............................................................................................... 17

    Heading 8543 ............................................................................................... 17

Chapter 90

    Heading 9013 .........................................................................................14, 15

Chapter 99 ............................................................................................................15, 21

U.S. Note 2 to Chapter 99

U.S. Notes 20(a) and 20(b) to Chapter 99 ................................................................ 10

    Heading 9903

      Subheading 9903.88.01 ........................................................................... 10

      Subheading 9903.88.03 ........................................................................... 17

      Subheading 9903.88.46 ......................................................................16, 18

      Subheading 9903.88.56 ......................................................................16, 18

**Rules**

USCIT Rule 30(b)(6) ...................................................................................................... 6

USCIT Rule 56(c)(1)(A) ................................................................................................ 5

**Other Authorities**

U.S. Gov't Accountability Off., GAO-21-506,
    Report to Congressional Requesters: U.S. Trade 3 (2021)...............................................15, 16

APPARATUS, *Merriam Webster,*
 available at https://www.merriam-webster.com/dictionary/apparatus.........................................3

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

          *Plaintiff,*

      v.

UNITED STATES,

          *Defendant.*

Court No. 21-00573

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER
## SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this memorandum in reply to plaintiff's, Mitsubishi Power Americas, Inc. (Mitsubishi), response to our cross-motion for summary judgment. As further shown below, summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and the undisputed facts show that defendant is entitled to judgment in its favor as a matter of law.

## INTRODUCTION

In our cross-motion, we established that the subject merchandise consists of selective catalytic reduction (SCR) catalyst blocks that are not covered by an exclusion from additional 25 percent *ad valorem* duties assessed under Section 301 of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C. § 2411) (Section 301). The undisputed facts show that Mitsubishi's imported products consist of a block frame, catalyst unit frames for 16 catalyst units, the stainless-steel mesh of 80 catalyst elements within each of the catalyst units, seal bars, seal plates, protectors, and spacers, and the imported goods are specifically designed to catalyze the reduction of unwanted or undesirable nitrogen oxides and elemental mercury in flue gas, replacing them with nitrogen,

water, and oxidized mercury.  *See* Def. SOF ¶¶ 7-12, 16-17; Pl. Resp. to Def. SOF ¶¶ 7-12, 16-17.  Because the common and commercial meaning of "filter" and "purify" includes freeing from undesirable elements, and the imported SCR catalyst blocks catalytically convert undesirable elements in the flue gas, thereby reducing or "eliminat[ing] unwanted properties" from the flue gas, the imported blocks filter or purify within the meaning of heading 8421, HTSUS, and are properly classified under that heading.  *See Franklin v. United States*, 289 F.3d 753, 759 (Fed. Cir. 2002); *Noss Co. v. United States*, 588 F.Supp. 1408, 1412 n.4 (Ct. Int'l Trade 1984) (noting that "'purify' and 'filter' can be used [synonymously]"), *aff'd*, 753 F.2d 1052 (Fed. Cir. 1985).

Moreover, as we discussed in our cross-motion, the SCR catalyst blocks are not properly classified under heading 3815, which is a basket provision that describes "reaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included." Mitsubishi's arguments in favor of this provision are legally flawed as it misapplies the sequential order of the GRIs of the tariff code by glossing over GRI 1 and jumping immediately to GRI 3(b).  But GRI 3(b) is inapplicable here, because the blocks are described in whole by heading 8421, pursuant to GRI 1.

Finally, as we explained in our cross-motion, no Section 301 exclusions apply to the SCR catalyst blocks.[1]

_____

[1] Plaintiff argues that the Government "misunderstands, and thus misrepresents, the purpose, function, and contents of the Supported SCR Catalyst Blocks."  Pl. Reply (ECF No. 65), 1-2. Not so.  Our description and analysis of the imported merchandise is tied to the undisputed facts, as is reflected by the citations in our opening papers and in this reply brief.  Such a characterization by plaintiff is simply not correct and unwarranted.

## ARGUMENT

I.    **The SCR Catalyst Blocks Are "Filtering Or Purifying . . . Apparatus, For . . . Gases," Of Heading 8421**

As we demonstrate in our opening papers, and contrary to plaintiff's arguments (Pl. Reply at 5), the imported SCR catalyst blocks are properly classified under heading 8421, which describes "filtering or purifying . . . apparatus, for . . . gases." The blocks are apparatus, which are commonly defined as complex devices that perform a particular function. And they filter or purify gases; specifically, when flue gas passes through, nitrogen oxides and elemental mercury are removed through chemical reactions. That makes the SCR catalyst blocks filtering or purifying apparatus for gases—just like a car's catalytic converter—as the Explanatory Notes confirm.

A.    **The SCR Catalyst Blocks Are Apparatus—A Set Of Materials, Equipment, Instrument, Or Appliance Designed For A Particular Use Or A Specific Operation**

Plaintiff introduces a new argument in its reply brief, which it did not make in its opening papers—plaintiff argues that the SCR catalyst blocks are not "apparatus." Pl. Reply, 5-6. The common meaning of "apparatus," as relevant here, is "a set of materials or equipment designed for a particular use," or "an instrument or appliance designed for a specific operation." *Apparatus*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/apparatus (last visited Feb. 7, 2025). This interpretation is supported by the Court's decision in *Trijicon, Inc. v. United States*, 686 F.Supp.3d 1336, 1344 (Ct. Int'l Trade 2024), which defined the term as "equipment designed specifically to carry out a particular function" or "any complex device or machine for a specific use." (internal quotations omitted); *see also Continental Automotive Systems, Inc. v. United States*, 589 F.Supp.3d 1215, 1218-1225 (Ct. Int'l Trade 2022) (holding

3

that the imported NOx Sensor Probes, commonly used in a selective catalytic reduction system to condition a vehicle's exhaust gas to remove pollutants, were gas or smoke analysis apparatus).

The SCR catalyst blocks are described by the common meaning of "apparatus."  The blocks comprise a set of equipment—the block frame, the catalyst unit frames for 16 catalyst units, the stainless-steel mesh of 80 catalyst elements within each of the catalyst units, the seal bars, the seal plates, the protectors, and the spacers—specifically or selectively designed to catalyze the reduction of nitrogen oxides and the oxidation of elemental mercury in flue gas. Def. SOF ¶¶ 7-12, 16-17.  For similar reasons, the SCR catalyst blocks are also "instruments or appliances designed for a specific operation," or alternatively, complex devices for a specific use.  *See* Def. SOF ¶¶ 48-50; Pl. Resp. to Def. SOF ¶¶ 49-50.  Although plaintiff argues that the SCR catalyst blocks are not "apparatus," Pl. Reply at 5-9, plaintiff cannot deny that the imported goods are "a set of materials or equipment."  In fact, plaintiff's Exhibit 2 refers to the SCR catalyst blocks as "materials" multiple times, noting that the SCR catalyst blocks are "the imported materials" and that the catalysts themselves are "materials" and just one component of the blocks, which are also comprised of other materials such as "screens" and "structural steel." Pl. Exs. 2, 11, 18, 19, 33, 43.

Moreover, the patents for the imported merchandise refer to the merchandise as "apparatus" and "equipment" numerous times.  *See* Def. Ex. 19, at 15, 17, 21, 23.  This is exceedingly compelling.  Oddly, in its response papers, plaintiff denies that these patents cover the imported merchandise.  Pl. Resp. to Def. SOF ¶¶ 75-83.  But this is belied by the record. Plaintiff provided the patents in response to a request to produce all patents "for each imported product."  *See id.*  Moreover, plaintiff's corporate representative confirmed that the patents apply to the imported merchandise.  Def. Ex. 5, Neidig Depo. Tr. at 84:24-98:16 (plaintiff's 30(b)(6)

witness discussing the patents and patent applications (contained at Def. Ex. 19) produced by

plaintiff in response to defendant's request for production and, at 86:25-87:5, confirming that the

patents and patent applications do "cover the imported merchandise, that's why it was

provided"); 88:5-7 ("Q. And this patent applies to the imported merchandise, right? A. Yes, this

patent does.").  Finally, plaintiff's denial of the relevancy of the patents (Pl. Resp. to Def. SOF at

¶¶ 75-83) is not supported by any record evidence.  USCIT Rule 56(c)(1)(A).[2]  In short, the

patents are relevant and compelling.

Next, it is undisputed that the SCR catalyst blocks are "designed for a particular use" or

"for a specific operation," as the definitions for "apparatus" above also require.  Plaintiff's

Exhibit 2 at page 12 confirms that:

> "[t]he SCR process is so termed because: 1) it is Selective in that it
> is *designed to promote a specific reaction* (i.e. ammonia and NOx,
> as discussed below), 2) it is Catalytic (in that catalysts are used to
> promote the target reaction), and 3) the *type* of chemical reaction
> that is being performed is classified as a Reduction reaction).

(italics added, underline in original).  As such, plaintiff cannot genuinely dispute that the SCR

catalyst blocks are designed for a particular use or a specific operation, given that their name

actually reflects their particular use.  Taken together, the undisputed evidence shows that the

SCR catalyst blocks are apparatus according to the common meaning of the term.

The Explanatory Notes to heading 8421 further show that the SCR catalyst blocks are

"apparatus."  The Explanatory Notes indicate that "[m]uch of" the apparatus of heading 8421 "is

purely static equipment with no moving parts.  The heading covers filters and purifiers of *all*

---

[2] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations, stipulations (including those made
for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"

*types* (physical or mechanical, *chemical*, magnetic . . . , etc.)."  Explanatory Note 84.21(II) (emphasis added).  Apparatus for filtering or purifying gases include "chemical filters and purifiers for air or other gases (including catalytic converters which change carbon monoxide in the exhaust gases of motor vehicles)."  Explanatory Note 84.21(II)(B)(4).  In other words, "apparatus" of heading 8421, like the SCR catalyst blocks, typically are "purely static equipment with no moving parts."  They, like the SCR catalyst blocks, may filter or purify through "chemical" means.  And they, like the SCR catalyst blocks, can filter or purify exhaust gases through the catalytic conversion of a harmful substance into a less harmful one.  The Explanatory Notes thus reinforce that, like catalytic converters for cars, SCR catalyst blocks are filtering or purifying apparatus for gases.

In fact, plaintiff's corporate agent, designated under USCIT Rule 30(b)(6), Mr. Kyle Neidig, confirmed that a catalytic converter also "catalyze[s] reactions" which "result[ ] in the reduction of harmful substances."  Def. Ex. 5, Neidig Depo. Tr. at 36:2-9.  Mr. Neidig further agreed that a catalytic converter is "an apparatus for purifying exhaust gases of an internal combustion engine."  *Id.* at 38:13-17.  Mr. Neidig also agreed that the exhaust gas that comes out at the outlet of a catalytic converter is not 100 percent free of harmful pollutants, *id.* at 119:17-120:2, and that, similarly, the exhaust gas that goes through the SCR blocks at the outlet is not 100 percent free of harmful pollutants.  *Id.* at 119:17-121:19 (specifically, at 121:11-19, "Q. Okay.  And that's similar to these SCR blocks, the exhaust gas goes through and at the outlet, the NOx is reduced like, what, 80, 90, 95 percent?  Correct me, please.  A. That's correct.  Q. What percentage?  A. Roughly, 80 to 90 percent is typical.").  As such, the significant similarities between the specific design and function of a catalytic converter and the imported SCR catalyst blocks further reflect that the blocks are also apparatus which specifically purify exhaust gas.

**B. The SCR Catalyst Blocks Filter Or Purify Gases By Converting Harmful Substances Into Innocuous Ones**

Plaintiff argues that the SCR catalyst blocks do not filter or purify gases. Pl. Reply, 11-12. In our opening papers, we explained how the verbs "filter" and "purify" are used interchangeably and that their common definition is "to free from undesirable elements." Def. Cross-Mot., 17-18. We further noted that the U.S. Court of Appeals for the Federal Circuit has held that if an imported good "eliminate[s] unwanted properties" from a substance, then it is also freeing the substance from undesirable elements, and therefore purifying within the meaning of heading 8421. *Franklin v. United States*, 289 F.3d 753, 759 (Fed. Cir. 2002). That is precisely the function of the SCR catalyst blocks—they catalytically convert unwanted or undesirable nitrogen oxides and elemental mercury in flue gas, replacing them with nitrogen, water, and oxidized mercury. *See* Def. SOF ¶¶ 16-17; Pl. Resp. to Def. SOF ¶¶ 16-17.

Indeed, Mitsubishi specifically markets its SCR catalyst blocks as capable of reducing or removing unwanted nitrogen oxides and elemental mercury from flue gas. Mitsubishi's marketing materials are compelling and Mitsubishi fails to show otherwise. *Compare* Def. SOF ¶¶ 73-74 *with* Pl. Resp. to Def. SOF ¶¶ 73-74 (failing to cite any evidence to contradict our well-supported statements of fact at paragraphs 73-74). Moreover, Mitsubishi's patents, which Mr. Neidig confirmed cover the catalysts used in the SCR catalyst blocks, state that the catalysts "purify" flue gas through the catalytic conversion of nitrogen oxides and elemental mercury. Def. SOF ¶¶ 75-83. Accordingly, the plain language of heading 8421 covers the SCR catalyst blocks.

Plaintiff further argues that chemical conversion of undesirable elements in gases into new, innocuous substances does not qualify as gas purification. Pl. Reply, 11-14. But this argument is contradicted by the tariff code. The code classifies catalytic converters under

7

heading 8421, specifically under 8421.39.40.  *See also* Explanatory Notes at 84.21(II)(B)(4): "chemical filters and purifiers for air or other gases (including catalytic converters which *change* carbon monoxide in the exhaust gases of motor vehicles)."  (emphasis added).  Changing or converting harmful gases, such as carbon monoxide—or as here, nitric oxides—into innocuous substances qualifies as filtering or purifying gases, and therefore is encompassed by heading 8421.  Plaintiff fails to explain how catalytic converters are appropriately classified under the tariff code as apparatus for gas purification but the imported SCR catalyst blocks (which also *catalytically convert*, and thereby remove, harmful gases like NOx from flue gas) are not equally classified in the same provision.

Plaintiff relies heavily on the report of its expert to argue that the SCR catalyst blocks do not filter or purify flue gas, Pl. Reply at 6, but as we noted in our opening papers, Dr. Hinton's report's conclusions are based on an erroneous legal analysis of tariff terms and the Explanatory Notes, rather than scientific method or experience, which is inappropriate for an expert witness. It is the Court who is charged with interpreting the law and the tariff terms, not the expert witness.  *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations.  That's a subject for the court, not for testimonial experts.  The only legal expert in a federal courtroom is the judge." (citation omitted)).  As such, the report has little probative value.  *See, e.g.*, *Pioneer Ctrs. Holding Co. ESOP & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017) ("[A]n expert may not . . . state legal conclusions drawn by applying the law to the facts." (quotation omitted)).

Furthermore, as we previously noted in our opening papers and in our Statement of Facts, plaintiff's expert confirmed in his deposition that the term "NOx removal" is frequently used in the field of SCR technology.  Def. SOF ¶ 84.  Mr. Hinton testified as follows:

> 20 Q Now, you have regularly referred to -- the
> 21 term is NOx removal -- throughout your career; is that
> 22 correct?
> 23 A Yes.

Def. Ex. 12, at 116:20-23. And Mr. Hinton further testified as follows regarding how the terms

"NOx destruction," "NOx removal," and "deNOx" are used interchangeably and frequently in

the field of SCR technology:

> 24 Q Is it fair to say that NOx destruction and
> 25 NOx removal, deNOx are used interchangeably and
> 1 frequently in the field of SCR technology?
> 2 A Yes.

*Id.* at 116:20-23.

> 23 Q But what we're getting at here, and so we
> 24 can move on, is NOx removal is a common term used in
> 25 the field of SCR technology, correct?
> 1 A Absolutely.

*Id.* at 132:23-133:1.

Plaintiff attempts to distance itself from this testimony. Pl. Resp. to Def. SOF ¶ 84. But

the testimony stands for itself.

So too in the SCR industry, the SCR catalyst blocks are considered to engage in removal

of $NO_X$ from the flue gas, further confirming that the blocks are filtering or purifying apparatus

of heading 8421. This comports with the meaning of purify, which is to remove, reduce, or

eliminate undesirable elements from one substance, including through chemical conversion of

the undesirable elements into innocuous ones.

As explained above and in our opening papers, classifying the imported merchandise

under heading 8421 is supported by the common meaning of the tariff terms, the case law, and

the Explanatory Notes. As such, Mitsubishi's argument that the SCR catalyst blocks do not filter

or purify gases is contradicted by the undisputed facts, the definitions, and precedential case law.

Therefore, the blocks are properly classified under heading 8421, and specifically subheading 8421.39.80, which covers "Filtering or purifying machinery and apparatus for gases: Other: Other," as explained in our opening papers.  Def. Cross-Mot., 30-31.

Lastly, HTSUS Chapter 99 Notes 20(a) and 20(b) instruct that articles from China that are classified under certain subheadings, including 8421.39.80, are further classified under secondary heading 9903.88.01.  *See* U.S. Notes 20(a) and 20(b) to Chapter 99, HTSUS. Therefore, because the SCR catalyst blocks are the product of China and are classified under subheading 8421.39.80, they are further classified under secondary heading 9903.88.01 and are thereby subject to Section 301 duties.

## II.    The SCR Catalyst Blocks Are Not "Reaction Initiators, Reaction Accelerators And Catalytic Preparations, Not Elsewhere Specified Or Included," Of Heading 3815

Mitsubishi incorrectly asserts that its SCR catalyst blocks are *prima facie* classified under heading 3815, HTSUS.  Pl. Reply, 14–32.  But as we explained in our opening papers, Def. Cross-Mot. at 31-34, heading 3815 is a basket provision that is only applicable to goods "*not elsewhere specified or included*."  (emphasis added).  As a basket provision, by definition, heading 3815 cannot describe any good if any other non-basket provision, such as heading 8421, applies.  And because, as shown above and in our cross-motion, heading 8421 describes the SCR catalyst blocks "in whole" pursuant to GRI 1, the blocks are "elsewhere specified or included"— specifically, in heading 8421—thus making heading 3815 inapplicable.  *See Home Depot U.S.A., Inc. v. United States*, 915 F. 3d 1374, 1380 (Fed. Cir. 2019) (explaining that GRI 1 applies, and the succeeding GRIs are inoperative, when an article is covered in whole by a single classification heading, and that GRI 3 only applies when goods are *prima facie* classifiable under two or more headings).  Moreover, even were heading 3815 not a basket provision, classification

under this heading is not supported, and to arrive at that classification, Mitsubishi misapplies the sequential order of the GRIs.

### A. The SCR Catalyst Blocks Are Not Covered By The Plain Meaning Of The Terms Of Heading 3815

The SCR catalyst blocks are not classified under heading 3815 pursuant to GRI 1. As noted, heading 3815 is a basket provision, and because pursuant to GRI 1, the blocks are "described in whole" by heading 8421, they cannot be classified in heading 3815 pursuant to GRI 1. *See Home Depot*, 915 F.3d at 1380 ("'when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative'") (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)). Mitsubishi accuses defendant of providing "false" analysis of and a "distorted" reference to the Court's decision in *Home Depot*. Pl. Reply, 21-22. But, as reflected by the decision itself, the Court in *Home Depot* followed earlier Federal Circuit precedent by directly quoting to *Camelbak* for the well-established premise that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative. And this precedent clearly applies here, where heading 8421 describes in whole the SCR catalyst blocks because they are apparatus that filter or purify gases, such that under GRI 1, heading 8421 applies and the succeeding GRIs are inoperative. Because heading 8421 describes the imported goods "in whole," heading 3815—which is a basket provision that only applies to goods "not elsewhere specified or included"—is specifically excluded from consideration by its own text and therefore cannot *prima facie* apply to the imported goods.

Even setting aside that goods may only be classified under heading 3815 if they are "not elsewhere specified or included," GRI 3(a) also dictates that the subject merchandise must be

classified under heading 8421 because it is the only heading that describes the merchandise in whole and it therefore provides the most specific description. *See* GRI 3(a) ("The heading which provides the most specific description shall be preferred to headings providing a more general description."). Although GRI 3(a) states that headings that "*each refer to part only* of the materials or substances contained in mixed or composite goods . . . are to be regarded as equally specific in relation to those goods," that is not the case here where the subject merchandise is plainly described, in whole, by heading 8421. *See* GRI 3(a) (emphasis added).

## B. Mitsubishi Misapplies The Sequential Order Of The GRIs

As explained in our opening papers, Mitsubishi misapplies the sequential order of the GRIs and jumps straight to GRI 3(b), arguing that the blocks are "composite goods" whose classification is controlled by the material or "component which gives them their essential character." *See* Pl. Reply, 24 (quoting GRI 3(b)).

That is wrong. "The court applies the GRIs in numerical order and only continues to a subsequent GRI if proper classification of the imported goods cannot be accomplished by reference to a preceding GRI." *Ildico Inc. v. United States*, 2024 WL 4648084, at *3 (Ct. Int'l Trade Nov. 1, 2024) (quotation omitted). And as explained above, here, GRI 1 resolves the classification, because the imported articles are comprised of entire SCR catalyst blocks—not just the supported SCR catalysts within them. As such, they are articles that are described *in whole* by heading 8421, but only *in part* by heading 3815. Resort beyond GRI 1 is therefore improper. Even if the court were to look beyond GR1, GRI 3(a) would resolve the classification under heading 8421.

**C. The Flawed Nature Of Mitsubishi's Classification Analysis Is Revealed By Its Application Of GRI 3(b)**

Resort to GRI 3(b) is only appropriate when "by application of [GRI] 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings," and they "cannot be classified by reference to GRI 3(a)." For GRI 3(b) to be applicable in this case, then, the SCR catalyst blocks must be *prima facie* classifiable under two or more headings, and the competing headings must each refer to the goods in "part only." But in its reply, Mitsubishi again fails to explain which headings are applicable to the SCR catalyst blocks. Pl. Reply, 24. Mitsubishi speculates that some headings under Chapters 72 or 73 may apply in addition to 3815, but it again fails to identify which headings and to conduct a full GRI 3(b) analysis. And the main reason for Mitsubishi's struggle is that it fatally ignores that heading 3815 *only* covers goods "***not elsewhere specified or included***" in the HTSUS. (emphasis added). And as explained above, because the SCR catalyst blocks are *prima facie* classifiable under heading 8421, then by operation of the carve out of heading 3815 (the language "not elsewhere specified or included"), the imported merchandise is disqualified from classification under heading 3815.

**D. Additional U.S. Rule Of Interpretation ("ARI") 1(c) Does Not Apply Because The SCR Catalyst Blocks Are Classified As Filtering or Purifying Apparatuses Of Heading 8421—Not As "Parts"**

Plaintiff's argument that the SCR catalyst blocks could only be classified under the parts provision of heading 8421 is wrong and runs afoul of Note 2(a) to Section XVI. Note 2(a) to Section XVI dictates that "parts which are goods included in any of the headings of chapter 84 or 85 . . . are in all cases to be classified in their respective headings."

Regardless of whether they can work outside of the systems in which they are installed, the SCR catalyst blocks are apparatus that perform the discrete function of filtering or purifying gases by catalytically converting harmful substances into less harmful substances—a function

13

described by heading 8421.[3]  The SCR catalyst blocks are thus goods of heading 8421, namely,

filtering or purifying apparatus, and must be classified as such pursuant to Section XVI Note 2(a)

and GRI 1 rather than being classified more generally as "parts" of a larger system.

Accordingly, heading 8421's provision for filtering or purifying apparatus is the "specific

provision" for the SCR catalyst blocks, and their classification under that heading does not

violate ARI 1(c), which only comes into play when one of the competing provisions is for

"parts" or "parts and accessories."  *See* ARI 1(c).[4]  Plaintiff's arguments regarding the

application of ARI 1(c) are thus inapposite.

Second, plaintiff cites to *Sharp Microelectronics Tech., Inc. v. United States*, 122 F.3d

1446 (Fed. Cir. 1997), which compared heading 8473, which provides for "[p]arts and

accessories (other than covers, carrying cases and the like) suitable for use solely or principally

with machines of headings 8470 to 8472," with heading 9013, which provides for "[l]iquid

crystal devices not constituting articles provided for more specifically in other headings."  Pl.

Reply, 25-26.  But that case is inapposite and distinguishable for several reasons.  To begin,

heading 8473 is solely a parts provision, whereas here, heading 8421 is a broad heading that

specifically includes apparatus that filter or purify gases, as well as parts thereof.  Further, as

explained above, because the SCR catalyst blocks are apparatus, the parts provision of heading

8421 need not be considered.  Moreover, heading 3815 at issue here uses significantly different

language ("not elsewhere specified or *included*") than heading 9013 ("not constituting articles

---

[3] We note that automobile catalytic converters, which are also classified under heading 8421, similarly function through catalytic conversion and cannot operate without being attached to other exhaust system components.

[4] AR1(c) states, "A provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory."

provided for *more specifically* in other headings") at issue in *Sharp*.  (emphasis added).  As the

Federal Circuit noted in *Sharp*, "heading 9013 itself invites a relative specificity analysis" (under

GRI 1) because the imported glass cells were plausibly described in whole by both heading 8473

and 9013.  122 F.3d at 1450.[5]  And here, the language of heading 3815 does not invite a relative

specificity analysis, and instead is akin to a basket provision, *i.e.*, its carve out language suggests

that the heading should be excluded if the types of goods described in the heading are merely

"included" in another heading.  And unlike in *Sharp*, the imported goods here are not described

in whole by two or more headings, but only by heading 8421, such that resort beyond GRI 1 is

unnecessary.

### III.    The SCR Catalyst Blocks Do Not Qualify For Exclusions From Section 301 Duties

As we explained in our opening papers, the SCR catalyst blocks are also not classifiable

under two secondary headings of Chapter 99 which provide exclusions from Section 301 duties.

Although Mitsubishi requested these exclusions, the tariff provisions for the exclusions do not

describe the imported SCR catalyst blocks.

### A.  The Product-Specific, Written Descriptions Of Section 301 Exclusions Govern—Not Product Descriptions Provided In Exclusion Requests

Section 301 authorizes the President and USTR to take action to eliminate certain acts,

policies, or practices of a foreign government that burden U.S. commerce.  *See* 19 U.S.C. § 2411.

Under this authority, in August 2017, USTR began investigating certain trade practices of China.

USTR found that some of those trade practices "burden[ed] or restrict[ed] U.S. commerce."  U.S.

---

[5] Notably, it was the language of heading 9013 itself, along with GRI 1, that mandated the relative specificity analysis by the Court in *Sharp*, and there was no resort to GRI 3(a).  So the decision in *Sharp* provides another example of the importance of resolving classification disputes under GRI 1, and only resorting to subsequent GRIs if truly necessary.  122 F.3d at 1449.

Gov't Accountability Off., GAO-21-506, Report to Congressional Requesters: U.S. Trade 3 (2021). "To help obtain the elimination of" those trade practices, USTR, "at the direction of the President, placed additional tariffs on certain products from China starting in July 2018." *Id.* at 1.

But USTR also established a process by which interested parties may request that particular products classified under a secondary tariff heading subject to Section 301 duties be excluded from those duties. *See Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 27,489, 27,489–90 (USTR May 8, 2020) ("*Exclusion Notice*"). These product-specific exclusions were "available for any product that meets the description in the Annex [to the Federal Register notices], regardless of whether the importer filed an exclusion request." *Id.* at 27,490. "[T]he scope of each exclusion," however, "is governed by the scope of" the "product descriptions in the Annex"—"not by the product descriptions" provided in "any particular request for exclusion." *Exclusion Notice*, 85 Fed. Reg. at 27,490.

## B. The Exclusions, As Written, Do Not Cover The SCR Catalyst Blocks

Here, Mitsubishi claims its SCR catalyst blocks meet the descriptions of two exclusions set forth in the Annexes to the *Exclusion Notice* and incorporated into the HTSUS via secondary headings 9903.88.46 and 9903.88.56: "Plate-type supported catalysts (reaction accelerators) for reduction of nitrous oxides (NOx)," "applied" to "a stainless steel mesh (described in statistical reporting number 3815.19.0000)." Despite the fact that Mitsubishi itself requested these exclusions, the tariff provisions for the exclusions, as written, do not cover the SCR catalyst blocks.

First, the SCR catalyst blocks do not meet the tariff provisions for the exclusions because they are not "described in statistical reporting number 3815.19.0000." As explained above, the blocks are not classifiable under heading 3815. They cannot, therefore, be described in any subheading or statistical reporting number nested beneath that heading.

Second, even if we assume for the sake of argument that the SCR catalyst blocks are classifiable under statistical reporting number 3815.19.0000 (which they are not), the SCR catalyst blocks *still* do not meet the terms of the exclusions. As written, the exclusions, at most cover *only* the catalyst elements within the SCR catalyst blocks: "Plate-type *supported catalysts* (reaction accelerators) for reduction of nitrous oxides (NOx) with enhanced mercury oxidation, with oxides of base metals being the active substances, applied to a stainless steel mesh (described in statistical reporting number 3815.19.0000)," or "[p]late-type *supported catalysts* (reaction accelerators) for reduction of nitrous oxides (NOx), with base metals being the active substances, applied on a titanium dioxide based ceramic material to a stainless steel mesh (described in statistical reporting number 3815.19.0000)." 9903.88.03, HTSUS (emphasis added); *see also* Def. SOF ¶¶ 9, 13–17. The exclusions do not cover the complete SCR catalyst blocks, each of which also includes catalyst units that house the catalyst elements along with the block frame, a protector, seal bars, a seal plate, and, depending on the application, spacers. Def. SOF ¶¶ 7-8, 11, 49. Because the exclusions cover just one component of SCR catalyst blocks, rather than the SCR catalyst blocks as a whole, they are inapplicable. *See, e.g.*, *Prysm, Inc. v. United States*, 2019 WL 6332638, at *4 n.9 (Ct. Int'l Trade Nov. 26, 2019) (explaining that no inquiry into the potential applicability of heading 8543, which covers "[e]lectrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof," was necessary because heading 8528 wholly described the subject products and the

17

parties agreed that the products were imported as complete units); *Russ Berrie & Co., Inc. v. United States*, 329 F.Supp.3d 1345, 1375–76 (Ct. Int'l Trade 2018) (headings that "do not describe the entire article but only a part thereof" are inapplicable under GRI 1).

For both these reasons, the SCR catalyst blocks do not meet the descriptions set forth in secondary headings 9903.88.46 and 9903.88.56, and are thus not excluded from Section 301 duties.

## IV.    There Is No Legal Basis For The Alternative Remedy Requested By Mitsubishi Involving Equitable Estoppel

In the alternative, plaintiff requests the remedy of "equitably estopping from denying the application of the exclusions language to the Subject Merchandise regardless of the primary underlying classification." Pl. Reply, 37. Plaintiff has no basis for this request, for a number of reasons. First, as we explained in our opening papers, plaintiff's request is outside the scope of the Court's jurisdiction for this case. Mitsubishi brought this case pursuant to 28 U.S.C. § 1581(a). Therefore, the case is confined to the specific issue that has been protested, which is CBP's classification decision regarding the subject merchandise—not USTR's drafting of the exclusions. *See*, *e.g.*, *Davies v. Arthur*, 96 U.S. 148, 149 (1878); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1366 (Fed. Cir. 2006) (citing to Davies, 96 U.S. at 152-53). Further, the drafting of USTR's exclusions is not a protestable decision subject to remediation through the statutory protest mechanism of 19 U.S.C. §§ 1514(a) and 1515. Thus, the Court lacks jurisdiction pursuant to 28 U.S.C. § 1581(a) over any claims related to USTR's drafting of the exclusions.

Second, Mitsubishi places far too much weight on the fact that it requested the exclusions at issue. The act of making the request does not govern the application of the tariff code for an exclusion. Rather, the plain language of the tariff code itself governs its application. *Exclusion*

*Notice*, 85 Fed. Reg. at 27,490 ("the scope of each exclusion" is "governed by the scope of" the "product descriptions in the Annex" and ***not by the product descriptions***" provided in "***any particular request for exclusion***." (emphasis added)).  Thus, Mitsubishi's role in making the request is not relevant to the interpretation and application of the plain language of the exclusions.

Mitsubishi cites to *Keystone Automotive Operations, Inc. v. United States*, 732 F.Supp.3d 1339, 1350 (Ct. Int'l Trade 2024) for the argument that "[t]his Court has clearly established that the underlying exclusion request . . . is relevant when determining the applicability of the exclusion."  Pl. Reply, 4.  But Mitsubishi misinterprets the Court's decision.  Nowhere in *Keystone* does the Court negate the rule that "the scope of each exclusion" is "governed by the scope of" the "product descriptions in the Annex" and "not by the product descriptions" provided in "any particular request for exclusion."  *Exclusion Notice*, 85 Fed. Reg. at 27,490.  Rather, the Court referenced the administrative materials in *Keystone* as background solely for the purpose of showing a distinction between the language of the tariff exclusion and the language used in the exclusion request.  Ultimately, the Court focused on the language of the tariff exclusion, which comports with both GRI 1 and the guidance of the *Exclusion Notice*.

Third, Mitsubishi attempts to emphasize its reliance on USTR's letters granting the exclusions to support its argument for equitable estoppel.  Pl. Reply, 40-41.  Specifically, Mitsubishi argues that it "reasonably relied on Defendant's approval letters (Pl. Ex. 10, 11) to maintain its manufacturing facilities and relationships in China and to continue importing the Subject Merchandise pursuant to Defendant's grant of the exclusions, expecting that the 25 percent Section 301 duties were not to be applied to its products."  *Id.* at 40.  But Mitsubishi appears to ignore the full text of the letters, particularly the following:

> An exclusion in response to your request has been granted by
> excluding from the additional tariffs products covered by a
> specially drafted description contained in the annex to the
> exclusion notice. The scope of the exclusion is governed by the
> scope of the 10-digit HTSUS subheadings and product descriptions
> in the annex to the product exclusion notice, and not by the product
> descriptions set out in any particular request for exclusion.

Pl. Exs. 10 and 11, at 12. Once again, USTR's exclusion approval letters emphasize that the

product descriptions set out in an exclusion are irrelevant, as the exclusions' scope is instead

governed by both "the scope of the 10-digit HTSUS subheadings and product descriptions in the

annex to the product exclusion notice." *Id.*

Fourth, even if the Court possessed jurisdiction to fashion the remedy requested—which

it does not—Mitsubishi has not shown that USTR or CBP engaged in any wrongdoing or

"affirmative misconduct." Pl. Reply, 39-40. In reality, plaintiff's Exhibits 10 and 11 contain

different descriptions of the merchandise that is the subject of the exclusion applications, *i.e.*, the

applications note that "[t]his product exclusion request *is specific to* plate-type DeNOx supported

catalysts also known as Denitrification Reaction Accelerator Catalyst" and "[t]his product

exclusion request *is specific to* plate-type DeNOx supported catalysts with enhanced mercury

oxidation also known as Multi-function Denitrification Reaction Accelerator Catalyst." Pl. Ex.

10, at 3, and Pl. Ex. 11, at 3 (emphasis added). In contrast, in plaintiff's own words, "[t]he

imported merchandise that is the subject of this action comprises Supported Selective Catalytic

Reduction ('SCR') Catalyst Blocks (collectively, the 'Subject Merchandise' or 'Supported SCR

Catalyst Blocks')" which "are comprised of approximately sixteen individual Catalyst Units,"

each which "is in turn comprised of approximately eighty individual Catalyst Plates." Pl. SOF

¶¶ 14-17.

Further, plaintiff describes in its SOF that the SCR catalyst blocks contain "a steel block frame" and "other miscellaneous components such as a protector, a set of seal bars, spacers, and a seal plate."  Pl. SOF ¶¶ 17-18.  Regardless, the exclusions were ultimately issued for "plate-type supported catalysts (reaction accelerators)" and not for SCR catalyst blocks which contain additional components.  Neither the merchandise nor the descriptions are the same, and this should be apparent to Mitsubishi.  At any rate, the Court cannot rewrite, reinterpret, or circumvent the statutory language of Chapter 99 of the HTSUS to order that exclusions which do not apply to the subject merchandise firstly because it is not first and foremost classified in the appropriate primary heading should apply "regardless of the primary underlying classification," and Mitsubishi has identified no precedent for such drastic action in a 1581(a) case.

Finally, as Mitsubishi itself acknowledged in its opening brief, *see* Pl. Br. at 28–29 (collecting examples) but surprisingly now denies in its reply brief, *see* Pl. Reply at 41, there are examples of importers engaging in an administrative process with USTR to revise exclusion language to correct alleged errors.  Moreover, the very same exclusion approval letters from USTR that Mitsubishi claims to have relied on (Pl. Exs. 11 and 12) contain a link at page 12 to a pre-publication version of the exclusion notice, which contains the following language:

> **FOR FURTHER INFORMATION CONTACT**: For general questions about this notice, contact Assistant General Counsels Philip Butler or Megan Grimball, or Director of Industrial Goods Justin Hoffmann at (202) 395–5725. For specific questions on customs classification or implementation of the product exclusions identified in the Annex to this notice, contact *traderemedy@cbp.dhs.gov*.

As such, Mitsubishi could have contacted USTR to clarify any questions or request revisions to the exclusion language that could have pulled in the complete SCR catalyst blocks, but Mitsubishi has not presented any evidence that it made any attempt to avail itself of the

administrative process or contact USTR at any time since the exclusions were initially issued in 2020. *See generally* Pl. Br. and Pl. Reply. Having sat on its hands, plaintiff should not be permitted to now cry foul or argue that the Court should rewrite the statute in its favor.

Indeed, it is Customs, not USTR, who must interpret and apply USTR's exclusions as written, and Customs cannot rewrite them to effect what a particular importer believes was the *intent* based on the importer's exclusion request. So too must this Court interpret and apply the tariff schedule as written. *See, e.g.*, *Brown Grp. Inc. v. United States*, 17 C.I.T. 919, 921 (1993) ("If the drafters of the statute erred it is up to Congress to correct the error. The court declines to rewrite the intricate footwear provisions of the tariff laws."). Consequently, Mitsubishi cannot rely on principles of equity for the Court to rewrite exclusions that do not cover the subject merchandise.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court deny plaintiff's motion for summary judgment, grant our cross-motion for summary judgment, enter judgment for defendant dismissing this action, and grant defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRETT A. SHAMUTE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

*Of Counsel*:                                    /s/ Brandon A. Kennedy
Michael Anderson                                 BRANDON A. KENNEDY
General Attorney                                 Trial Attorney
Office of the Assistant Chief Counsel            Civil Division, U.S. Dept. of Justice
International Trade Litigation                    Commercial Litigation Branch
U.S. Customs and Border Protection                26 Federal Plaza, Room 346
New York, New York 10278                         New York, New York 10278
                                                 Tel.: (212) 264-9230
                                                 *Attorneys for Defendant*

Dated: February 7, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. JANE A. RESTANI, JUDGE

MITSUBISHI POWER AMERICAS, INC.,

                    *Plaintiff,*

            v.                                            Court No. 21-00573

UNITED STATES,

                    *Defendant.*

**CERTIFICATE OF COMPLIANCE**

I, Brandon A. Kennedy, a Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Reply Memorandum In Further Support Of Its Cross-Motion for Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,932 words.

                                        /s/ Brandon A. Kennedy
                                        BRANDON A. KENNEDY